## Louisville & Nashville Railroad Company v. Spatig.

(Decided March 27, 1914.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch No. 4).

1. Personal Injuries—Pleading—Variance.—In this action for Personal injuries there was not such a variance between the pleading and proof as to render the variance fatal. Under the provisions of section 129 Civil Code, if it appeared to defendant that there was such variance, it should have shown that fact to the satisfaction of the court so that the pleading could have been amended.

2. Personal Injuries—Action for Damages—Verdict—Excessive.—In an action for personal injuries where plaintiff's jaw was fractured, a tooth knocked out, two others loosened so that they had to be drawn, and in consequence of his suffering he lost work from May until September, and certain numbness or paralysis because of the fracture, a verdict of $1,100.00 cannot be said to be excessive.

3. Personal Injuries—Negligence of Fellow Servants.—The contention of defendant that if there was any negligence it was that of a fellow servant, is not sustained by the evidence.

BENJAMIN D. WARFIELD, CHAS. H. MOORMAN and T. KENNEDY HELM for appellant.

EDWARDS, OGDEN & PEAK for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

Appellee sued to recover $10.000.00 for personal injuries, and $100.00 expenses for medical attention incident to the injury. He was employed as a car builder and repairer at appellant's shops in Louisville, and on May 9, 1912, while so engaged, he was struck on the jaw by the lever of a jack screw. The jury returned a verdict in his favor for $1,100.00. On this appeal appellant asks that the judgment be reversed on the following grounds:

1. That there is a fatal variance between plaintiff's pleading and proof.

2. The damages are excessive.

3. The court erred in authorizing the jury to find $100.00 for medical expenses when plaintiff proved $56.00 on that account.

4. There is no evidence to support the verdict.

5. If there was negligence, it was that of a fellow servant.

6. The court erred in the instructions given as well as in refusing to give those asked by appellant.

Appellee had been in the service of the railroad company for several years as a car repairer. He was away from the works on the day before the injury. On his return the morning of May 9th, he was directed by the foreman to assist another employee, named Reinhart, to complete repairs on a flat car upon which Reinhart had worked the day before. When they began work that morning they found one end of the car jacked up, or elevated above the truck; this elevated end being supported by wooden blocks placed between the truck and the car bottom. The jack screw was also still in place, and wedged against the car bottom, but how much of the car weight it was bearing at the time is not clear from the proof. In this condition the car had been left by the workmen the day before. They had completed all the repairs necessary except the placing of two floor boards. Appellee put down the floor boards in about fifteen minutes after commencing work, and then with Reinhart proceeded to lower the car into its proper position on the trucks. Reinhart took the blocks out of the way, and this left the car bed resting upon the jack screw only. Appellee had gone to the jack screw intending to lower the car by using, or pumping the jack screw lever, but just as he came to the lever, and before

he had even put his hand upon it, the jack screw slipped a cog, the lever flew up with all the force of the car weight on it, and struck appellee in the jaw, inflicting very painful and serious injuries. The whole case is based upon alleged defective and worn condition of the cogs in the jack screw.

We now come to a consideration of appellant's claim that there is such a variance between the pleadings and the proof as to constitute reversible error. The petition alleges that defendant furnished him a jack "in a defective and unsafe condition in that it was worn and the cogs were liable to slip and cause the lever to fly up and strike plaintiff in *using* the same," and that "this plaintiff *attempted to lower* said car bed down to the trucks of said car when * * * the jack slipped a cog thereby causing the lever to fly up, striking plaintiff, etc." Appellant insists that when plaintiff testified that he had not touched the jack lever when it let go, and struck him in the jaw, in reality he admitted he was not *using* same, nor had he *attempted to lower* the car bed down to the trucks, as his petition alleged. We do not think this objection is well taken. It is undenied that in the work of repairing this car they were using the jack, that is, they were using it in supporting the car, and it is also undenied that when the car repairs were completed, it was then proper and necessary for them to lower it to the trucks, and this is exactly what they were *attempting* to do when Reinhart took from under it the block supports, and appellee went to the jack screw intending, by working the lever, to lower the car into position. When the petition alleges that they were *using* the jack screw and *attempting to lower* the car, it does not mean that they were using any particular part of the jack screw, nor is it material that the car bed was actually not in motion. Appellee, and his companion, were really at the time using the jack screw, and attempting to lower the car bed. If in fact there was a variance, it will not be ground for reversal unless it was such as to mislead the appellant in its defense, and unless it really affected its substantial rights. Under provisions of section 129 of the Code, the party who claims to have been misled by variance must show that fact to the satisfacton of the court, so that the court may order the pleading to be amended, upon such terms as may be just.

The next objection is that the damages are excessive. The proof shows that his jaw bone was fractured, or at least pieces of bone came out of it, one of his teeth was knocked out at the time, and the same day when he came under the care of a physician, a dentist was called and extracted one or two others that were loose. From May 9th until about the end of the month, he was unable to work, and suffered severe pain. When he came back to work about the first of June, he was only able to stay a day or so, as his jaw began to swell. His physician then called in a surgeon, and after application of poultices, and a deal of medication, it was necessary to lance his jaw, remove the pus and one or more pieces of broken bone. It was not until September or October that he was able to take work again. For two weeks after he was hurt, he could only take soups and soft food as nourishment. The doctors testified that there is a certain amount of lost motion in his jaw; that he can only open his month about three-fourths normal; that it has impaired his mastication, and that he is still suffering from indigestion as a result of this poor mastication. There is also a certain sense of numbness, or paralysis ever present at the place of fracture, due no doubt to a nerve becoming encysted in the process of bone mending. In view of this State of facts, we cannot believe that appellant is serious when it urges that the damages awarded were excessive. In all events, we cannot agree with appellant's counsel on this proposition.

As a third ground for reversal appellant argues that the jury in awarding appellee $1,100.00, intended $1,000.00 as compensation for his injuries, and $100.00 to cover medical service. Without taking time to make a calculation from the proof of the amount charged by the dentist and the two physicians, we will assume for present purposes that it was only $56.00 as appellant argues. Appellee shows in addition, however, that for months he was taking medicine, applying poultices and bandages, and we cannot assume that these were secured without cost to him. If in fact the jury did award him $100 for medical expenses, we cannot say that it is not authorized by the proof, neither can we say that from the mere fact the jury's award was $1,100.00 in a lump sum, that it carries with it the inference that $100.00 was for medical expenses.

As to the fourth objection that there was no evidence to support the verdict, a consideration of the whole case

shows that the gist of the action was the alleged defective and unsafe condition of the jack screw, and there was ample proof on this proposition to take the case to the jury.

As to appellant's contention that if there was any negligence, it was that of the fellow servant, Reinhart, the proof discloses that the only part Reinhart took was in removing the blocks between the truck and the car bottom, and also in reversing the trigger on the jack screw. To lower the car this was absolutely necessary, and there is no intimation any where that it was negligently, or improperly done, or that it was negligence to remove them, and thus leave the whole weight of the car on the jack screw. The proof shows that the car could not have been lowered into position without removing the blocks, and the jack screw was the proper appliance for so lowering the car, and had been kept there for that purpose.

Appellant's final objection is as to the instructions, but they seem to us to be fair, and to have submitted to the jury every material issue in the case.

For these reasons the judgment of the lower court is affirmed.